# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE FRANK OGLESBY,<br><br>　　　　　　　Plaintiff,<br>vs.<br>LELAND MCEWEN, et al.,<br><br>　　　　　　　Defendants. | CASE NO. 11-cv-3026-DMS-MDD<br><br>REPORT AND RECOMMENDATION RE: RESPONDENTS' MOTION TO DISMISS [ECF No. 21] |

## I. INTRODUCTION

This Report and Recommendation is submitted to United States District Judge Dana M. Sabraw pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(d)(1) of the United States District Court for the Southern District of California. For the reasons set forth herein, the Court **RECOMMENDS** the Motion To Dismiss be **GRANTED**.

## II. PROCEDURAL HISTORY

Jesse Frank Oglesby ("Plaintiff") is a state prisoner currently incarcerated at Lancaster Prison in Lancaster, California. (ECF No. 6). On December 27, 2011, Plaintiff filed a complaint pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was housed at Calipatria State Prison ("Calipatria") in 2010. (ECF No. 1). On

February 21, 2012, the Court granted Plaintiff's motion to proceed *in forma pauperis* but dismissed the Complaint without prejudice for failure to state a claim upon which relief could be granted. (ECF No. 3). On April 9, 2012, Plaintiff filed a First Amended Complaint. (ECF No. 4). On June 7, 2012, the Court dismissed the First Amended Complaint for failure to state a claim upon which relief could be granted. (ECF No. 5). On July 23, 2012, Plaintiff filed a Second Amended Complaint naming nine defendants. (ECF No. 6). On January 31, 2013, Defendants Perez, Finder, and Ortiz answered. (ECF No. 20). Also on January 31, 2013, Defendants Gray, Belavich, Crow, Banaga-Bugarin, Zamora, and McEwen ("Defendants") moved to dismiss. (ECF No. 21).

After numerous extensions, Plaintiff filed an Opposition to the Motion to Dismiss on May 1, 2013. (ECF No. 33). On May 25, 2013, Plaintiff moved to withdraw his Opposition and requested leave to amend and re-file. (ECF No. 35). The Court granted Plaintiff's motion and set a deadline of June 24, 2013, for Plaintiff to file an amended Opposition. (*Id.*). Plaintiff did not meet this deadline. On July 8, 2013, Plaintiff filed a "Motion for Reconsideration" requesting another extension of the deadline for his amended Opposition. (ECF No. 43). On July 10, 2013, a Mandatory Settlement Conference was held and Plaintiff participated telephonically. No settlement was reached, however the parties used the opportunity to discuss matters before the Court, including Plaintiff's request for an extension. On July 12, 2013, the Court issued an order setting a new deadline of July 26, 2013. (ECF No. 45). In its order, the Court warned Plaintiff that if it did not receive an amended Opposition by this new deadline, the Court would construe Plaintiff's previously filed Opposition as the operative pleading. (*Id.*). Plaintiff did not meet this deadline. Instead, on July 26, 2013, Plaintiff filed yet another motion to

extend the deadline. (ECF No. 50). Due to the numerous deadlines Plaintiff has already missed, the Court is disinclined to grant another extension. Thus, the Court will construe Plaintiff's previously filed Opposition as the operative pleading and take Defendants' Motion to Dismiss under submission. (*See* ECF Nos. 33, 45). Plaintiff should note that he has the opportunity to file an objection to this Report and Recommendation within 14 days of being served with a copy. (Fed. R. Civ. P. 72(b)(2)).

### III. STATEMENT OF FACTS

The following facts are taken from Plaintiff's Second Amended Complaint and are not to be construed as findings of fact by the Court.

In this civil rights action, Plaintiff makes two claims. First, Plaintiff alleges that the Defendants engaged in cruel and unusual punishment within the meaning of the Eighth Amendment by demonstrating deliberate indifference to his medical needs. (ECF No. 6). Second, Plaintiff alleges that the Defendants conspired to commit this constitutional violation. (*Id*.).

On an unspecified date in 2010, Plaintiff alleges that Defendant Perez, a licensed vocational nurse at Calipatria, provided him the wrong medication in the morning medication line at the "A-Yard Clinic." (ECF No. 6 at 5). Plaintiff claims he was incorrectly provided with another inmate's medication which included doses of Robaxin, Neurontin, Tylenol #3, and Toradol (hereinafter the "medication incident"). (*Id*.). After receiving the medication, Plaintiff returned to his cell. (*Id*.).

Two hours later, a guard allegedly came to Plaintiff's cell and asked him to return to the A-Yard Clinic because he had been "administer[sic] the wrong medication in overdose." (*Id*.). At this time, Plaintiff claims he was feeling sluggish. (*Id*.). Upon returning to the A-Yard Clinic,

1  Plaintiff alleges that Defendant Perez told him he was "high." (*Id.* at 6).
2  Plaintiff alleges that Defendant Perez explained that she and her
3  supervisor, Defendant Ortiz, a Registered Nurse at Calipatria, wanted to
4  check Plaintiff's vitals. (*Id.*). Plaintiff alleges that after checking his
5  vitals, Defendant Perez went into an office to speak with Defendant
6  Ortiz. (*Id.*). Plaintiff claims they returned together and again told
7  Plaintiff that he was "high." (*Id.*). Plaintiff alleges that Perez and Ortiz
8  explained they could send him to get his stomach pumped, but they were
9  sure Plaintiff did not want that. (*Id.*). Plaintiff alleges that Perez and
10 Ortiz did not take any additional steps to address Plaintiff's adverse
11 reaction at that time. (*Id.*). Instead, Plaintiff claims he was sent back to
12 his cell. (*Id.*).

After returning to his cell, Plaintiff claims he experienced drowsiness and shortness of breath. (*Id.* at 7). At some point thereafter, Plaintiff's cellmate went to the A-Yard Clinic to inform Defendant Perez that Plaintiff was unable to walk, was complaining of drowsiness, and was extremely sleepy. (*Id.*). Prison guards came to help Plaintiff out of his cell and transport him to the "Trauma Center" which appears to be another medical facility at Calipatria. (*Id.*). At the Trauma Center, Plaintiff was seen by Dr. Estock who is not a Defendant in this suit. (*Id.*). Dr. Estock allegedly informed Plaintiff that her supervisor did not want to send him to an outside hospital. (*Id.*). Although Plaintiff does not provide further factual detail, he was presumably treated at the Trauma Center and later released. As a result of the medication incident, and the alleged failure to treat his subsequent overdose, Plaintiff contends he suffers seizures and chronic anxiety. (*Id.*). Plaintiff reports that he continues to suffer from muscle control and speech issues. (*Id.*).

Plaintiff also alleges there was a conspiracy to deny him adequate medical care and to cover up the medication incident altogether. (*Id*.). Plaintiff claims that after the incident, his medical records were altered to falsely reflect he had a history of seizures when, in fact, he did not experience seizures until after the incident occurred. (*Id*.). Specifically, Plaintiff alleges that Defendant Crow, the Chief Medical Executive at Calipatria, conspired to violate his constitutional rights by allowing his medical records to remain incorrect. (ECF No. 6 at 8). Plaintiff also alleges that Defendant McEwen, the Warden of Calipatria, failed to ensure the prison employees provided adequate medical care to prisoners. (*Id*. at 7).

Plaintiff claims to have completed the administrative appeal process challenging his treatment. (ECF No. 6). During this process, Plaintiff alleges that the prison appeals staff also conspired to deny him adequate medical care. (*Id*.). The alleged conspiracy consisted of allowing his medical records to incorrectly reflect he had a history of seizures prior to the medication incident. (*Id*. at 3). Specifically, Plaintiff alleges that Defendant Banaga-Bugarin, the Health Care Appeals Coordinator at Calipatria, "acted to protect the ongoing conspiracy." (*Id*.). Plaintiff also alleges that Defendant Zamora, the Chief of California Prison Health Care Services for healthcare appeals, participated in the conspiracy when she too allowed his medical records to remain incorrect and failed to find actionable misconduct by other defendants. (*Id*. at 8).

## IV. LEGAL STANDARD

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 ((9th Cir. 2001). Fed. R. Civ. P. 8(a) requires only "a short and plain statement

of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct,. 99 (1957). However, the Supreme Court has explained that the 'plain statement' must possess enough heft to show that the pleader is entitled to relief. *Twombly*, 550 U.S. at 557 (2007). Thus, while specific detail is not required, every complaint must, at a minimum, plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 500 U.S. at 556).

The court must assume the truth of the facts which are presented and construe all inferences from them in the light most favorable to the non-moving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). A *pro se* party's pleadings should be construed liberally. *Id*. However, the court is not required to "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (internal citation omitted). The court may not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

## V. DISCUSSION

Plaintiff's complaint alleges a civil rights violation pursuant to 42 U.S.C. § 1983. (ECF No. 6). Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of

state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States. *See* 42 U.S.C. § 1983; *Nelson v. Campbell*, 541 U.S. 637, 642 (2004).

### A. Eighth Amendment Violation

Plaintiff alleges that Defendants violated his Eighth Amendment rights when they provided him the incorrect medication and then failed to provide adequate medical care to treat his alleged subsequent overdose.

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 200 (1989). Medical care is one of the responsibilities placed on the State because a prisoner "must rely on prison authorities to treat his medical needs." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). In order to assert a claim for inadequate medical care, a plaintiff must allege facts which are sufficient to show that each person sued was "deliberately indifferent to his serious medical needs." *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Estelle*, 429 U.S. at 105-106.

A prisoner must satisfy two components to demonstrate an Eighth Amendment violation, an objective component and a subjective component. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991). First, the objective component requires the Plaintiff to allege sufficient facts to show an objectively "serious" medical need. *See Doty v. County of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994). Second, the subjective component requires the Plaintiff allege facts that, if true, demonstrate a "sufficiently culpable" state of mind on the part of each individual Defendant. *See Wilson*, 501 U.S. at 299.

**1. Serious Medical Need**

The objective component requires Plaintiff's allegations be sufficient to demonstrate, if proven, a serious medical need. *See Wilson*, 501 U.S. at 297. A serious medical need is demonstrated by a showing that the "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.' " *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citation omitted).

Plaintiff alleges that he was provided the wrong medication in the morning medication line and experienced adverse effects shortly thereafter. (ECF No. 6). Plaintiff claims that he suffered from a drug overdose which made him drowsy, sluggish, and gave him shortness of breath. (*Id.*). Plaintiff claims that on the day of the medication incident, he lost control of his muscles, vision, and speaking ability. (*Id.*). As a result of the incident, and the Defendants' alleged failure to provide subsequent adequate medical care, Plaintiff contends that he has seizures and suffers from chronic anxiety. (*Id.*). Plaintiff also reports that he continues to suffer from muscle control and speech issues. (*Id.*).

Plaintiff has sufficiently alleged a serious medical need to satisfy the objective component of his Eighth Amendment allegation.

**2. Deliberate Indifference**

The subjective component requires Plaintiff's allegations be sufficient to demonstrate, if proven, that each defendant acted with deliberate indifference to his serious medical needs. *Wilson*, 501 U.S. at 299. Defendants Perez, Finder, and Ortiz, who were directly involved in the medication incident, have answered Plaintiff's Second Amended Complaint and are not subject to the motion to dismiss. (*See* ECF Nos. 20, 21). Plaintiff does not allege that the subject Defendants were directly involved in the administration of the incorrect medication or the failure to

treat his alleged subsequent overdose. Instead, Plaintiff alleges that the Defendants are vicariously liable based on their various positions of authority within the prison system.

A prison official acts with deliberate indifference when he or she denies, delays, or interferes with the treatment of a prisoner's serious medical needs. *Estelle*, 429 U.S. at 105. "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Thus, prison officials must purposefully ignore or fail to respond to a plaintiff's pain or medical needs; neither an inadvertent failure to provide adequate medical care, nor mere negligence or medical malpractice constitutes a constitutional violation. *Estelle*, 429 U.S. at 105-106.

A plaintiff must show personal involvement by the defendant in the alleged incidents forming the constitutional injury. *Milton v. Nelson*, 527 F.2d 1158, 1159 (9th Cir. 1975). A defendant cannot be liable under § 1983 unless the defendant caused or participated in conduct violating a plaintiff's federal rights. *Monnell v. Dept. of Social Service of City of New York*, 436 U.S. 658, 692 (1978); *See also Iqbal*, 556 U.S. at 676. For a supervisor to be liable for constitutional violations, a plaintiff must show that the supervisor personally participated in the constitutional deprivation or that there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)).

### a. Defendants Gray and Belavich

Plaintiff identifies Defendant Gray as a Senior Registered Nurse at Calipatria. (ECF No. 6 at 2). Plaintiff identifies Defendant Belavich as the Chief Medical Executive Officer at Lancaster State Prison. (*Id.* at 3). Notably, Defendant Belavich does not work at Calipatria where Plaintiff alleges the deliberate indifference occurred. (*Id.*). The only mention of Gray and Belavich in the Second Amended Complaint is in Plaintiff's list of named Defendants. (ECF No. 6 at 2, 3). Under each of their names, Plaintiff provides a short explanation of how they acted under color of law. (*Id.*). Plaintiff alleges that Defendants Gray and Belavich "violate the Plaintiff Health & Safety under the Eighth and Fourteenth Amendment's. With Deliberate Indifference." (*Id.*).

Plaintiff fails to provide any additional factual allegations regarding either Defendant's involvement in the alleged constitutional violation. Neither Defendant, nor their alleged role, is mentioned in Plaintiff's statement of facts. (*Id.* at 5-9). Plaintiff does not explain how either Defendant was personally involved in administering the incorrect medication or the alleged denial of subsequent treatment. There are no factual allegations suggesting that either Defendant "caused" or "participated in" the conduct that allegedly violated Plaintiff's constitutional rights. Plaintiff does not allege any facts supporting the contention that Defendants Gray or Belavich purposefully denied, delayed, or interfered with the treatment of his serious medical needs. Thus, the Court finds that Plaintiff has failed to state an Eighth Amendment claim against either Defendant Gray or Defendant Belavich.

Accordingly, the Court **RECOMMENDS** that the Defendants' Motion to Dismiss be **GRANTED** as to Plaintiff's Eighth Amendment claims against Defendants Gray and Belavich.

### b. Defendant Crow

Plaintiff identifies Defendant Crow as the Chief Medical Executive at Calipatria. (ECF No. 6 at 2). Plaintiff alleges that Defendant Crow "[v]iolate the Plaintiff Health & Safety under the Eighth and Fourteenth Amendment's. With Deliberate Indifference." (*Id.*). Specifically, Plaintiff alleges that Defendant Crow allowed Plaintiff's medical records to falsely reflect he had a history of seizures prior to the medication incident. (*Id.* at 8). As a result, Plaintiff claims he is now dependent on "seizure medication and other medication to prevent recurrence." (*Id.*).

Plaintiff fails to provide any additional factual allegations regarding Defendant Crow's involvement in the alleged constitutional violation. Plaintiff does not explain how Defendant Crow was personally involved in administering the incorrect medication or the alleged denial of subsequent treatment. There are no factual allegations suggesting that Defendant Crow "caused" or "participated in" the conduct that allegedly violated Plaintiff's constitutional rights. Although Plaintiff alleges his medical records were falsified, he does not identify who falsified his medical records. Nor does Plaintiff explain how or when Defendant Crow learned that Plaintiff's medical records were incorrect. Further, Plaintiff fails to explain how the alleged inaccuracies demonstrate a deliberate indifference to Plaintiff's medical needs by Defendant Crow.

Plaintiff does not allege any facts supporting the contention that Defendant Crow purposefully denied, delayed, or interfered with the treatment of his serious medical needs. Thus, the Court finds that Plaintiff has failed to state an Eighth Amendment claim against Defendant Crow. Accordingly, the Court **RECOMMENDS** that the Defendants' Motion to Dismiss be **GRANTED** as to Plaintiff's Eighth Amendment claim against Defendant Crow.

### c. Defendant Banaga-Bugarin

Plaintiff identifies Defendant Banaga-Bugarin as the Health Care Appeals Coordinator at Calipatria. (ECF No. 6 at 3). Plaintiff alleges that Defendant Banaga-Bugarin "[v]iolate the Plaintiff Health & Safety under the Eighth and Fourteenth Amendment's . . . With Deliberate Indifference . . ." (*Id.*). Specifically, Plaintiff alleges that Defendant Banaga-Bugarin worked with the other named defendants to prevent the Plaintiff "from receiving Adequate Medical Care." (*Id.* at 8). Plaintiff also alleges that Defendant Banaga-Bugarin allowed Plaintiff's medical records to falsely reflect he had a history of seizures prior to the medication incident. (*Id.*).

Plaintiff fails to provide any additional factual allegations regarding Defendant Banaga-Bugarin's involvement in the alleged constitutional violation. Plaintiff does not explain how Defendant Banaga-Bugarin was personally involved in administering the incorrect medication or the alleged denial of subsequent treatment. There are no factual allegations suggesting that Defendant Banaga-Bugarin "caused" or "participated in" the conduct that allegedly violated Plaintiff's constitutional rights. Although Plaintiff alleges his medical records were falsified, he does not identify who falsified his medical records. Nor does Plaintiff explain how or when Defendant Banaga-Bugarin learned that Plaintiff's medical records were incorrect. Further, Plaintiff fails to explain how the alleged inaccuracies demonstrate a deliberate indifference to Plaintiff's medical needs by Defendant Banaga-Bugarin.

Plaintiff does not allege any facts supporting the contention that Defendant Banaga-Bugarin purposefully denied, delayed, or interfered with the treatment of his serious medical needs. Thus, the Court finds that Plaintiff has failed to state an Eighth Amendment claim against

Defendant Banaga-Bugarin. Accordingly, the Court **RECOMMENDS** that the Defendants' Motion to Dismiss be **GRANTED** as to Plaintiff's Eighth Amendment claim against Defendant Banaga-Bugarin.

### d. Defendant Zamora

Plaintiff identifies Defendant Zamora as the Chief of California Prison Health Care Services, Office of Third Level of Appeals in Sacramento, California. (ECF No. 6 at 4). Notably, Defendant Zamora does not work at Calipatria where Plaintiff alleges the deliberate indifference occurred. (*Id.*). However, Plaintiff alleges that Defendant Zamora "[v]iolate the Plaintiff Health & Safety under the Eighth and Fourteenth Amendments; With Deliberate Indifference . . ." (*Id.*). Specifically, Plaintiff appears to allege that Defendant Zamora demonstrated deliberate indifference to his medical needs when she denied Plaintiff's internal prison appeal. (*Id.* at 8).

Plaintiff fails to provide any additional factual allegations regarding Defendant Zamora's involvement in the alleged constitutional violation. Plaintiff does not explain how Defendant Zamora was personally involved in administering the incorrect medication or the alleged denial of subsequent treatment. There are no factual allegations suggesting that Defendant Zamora "caused" or "participated in" the conduct that allegedly violated Plaintiff's constitutional rights.

Plaintiff argues that Defendant Zamora should have ruled there was actionable misconduct by other defendants when she reviewed his internal prison appeal. (*Id.*). Prisoners do have a First Amendment right to file prison grievances. *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003). However, there is no constitutional right to a particular outcome of that grievance process. Plaintiff does not explain how denial of his internal appeal demonstrates a deliberate indifference to Plaintiff's

1  medical needs by Defendant Zamora. Plaintiff fails to allege facts
2  suggesting that Zamora denied his appeal in an effort to deny, delay, or
3  interfere with the treatment of his serious medical needs. Thus, the
4  Court finds that Plaintiff has failed to state an Eighth Amendment claim
5  against Defendant Zamora.

Accordingly, the Court **RECOMMENDS** that the Defendants' Motion to Dismiss be **GRANTED** as to Plaintiff's Eighth Amendment claim against Defendant Zamora.

### e. Defendant McEwen

Plaintiff identifies Defendant McEwen as the Warden of Calipatria State Prison. (ECF No. 6 at 3). Plaintiff alleges that Defendant McEwen "[v]iolate the Plaintiff Health and Safety under the Eighth and Fourteenth Amendments . . . With Deliberate Indifference . . ." (*Id.*). Specifically, Plaintiff alleges that Defendant McEwen failed to ensure that the prison employees provided prisoners with adequate medical care. (*Id.* at 7-8). To the extent that Plaintiff's claim against Defendant McEwen is based on a theory of respondeat superior, this is insufficient to establish deliberate indifference to Plaintiff's medical needs. *See Iqbal,* 556 U.S. at 676.

"[V]icarious liability is inapplicable to . . . § 1983 suits." *Id.* "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Id.* The Ninth Circuit has developed a theory of direct liability based on the supervisor's "own culpable action or inaction in the training, supervision, or control of his subordinates," "his acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a

reckless or callous indifference to the rights of others." *See Starr v. Baca*, 652 F.3d 1202, 1206-1207 (9th Cir. 2011). A defendant may be held liable as a supervisor under § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Id*.

Plaintiff does not contend that Defendant McEwen was personally involved in administering the incorrect medication or the alleged denial of subsequent treatment. Plaintiff contends that Defendant McEwen generally failed to ensure that the prison employees provided prisoners with adequate medical care. Plaintiff provides no factual allegations to support that contention. Plaintiff does not identify a specific wrongful act by Defendant McEwen, nor does he allege a causal connection between a wrongful act and the alleged constitutional violation. Plaintiff does not allege any facts supporting the contention that Defendant McEwen purposefully denied, delayed, or interfered with the treatment of his serious medical needs. Thus, the Court finds that Plaintiff has failed to state an Eighth Amendment claim against Defendant McEwen.

Accordingly, the Court **RECOMMENDS** that Defendants' Motion to Dismiss be **GRANTED** as to Plaintiff's Eighth Amendment claim against Defendant McEwen.

**B.** **Conspiracy**

Plaintiff also broadly claims that each Defendant conspired to commit a violation of his Eighth and Fourteenth Amendment rights. Plaintiff states, without any factual support, that they engaged in a conspiracy "to cover up the fact that Plaintiff was indeed put in harm." (ECF No. 6).

"Conspiracy is not itself a constitutional tort under § 1983." *Lacey v.*

*Maricopa County*, 693 F.3d 896, 935 (9th Cir. 2012). However, an alleged conspiracy can demonstrate a particular defendant's causal relationship to an underlying constitutional tort. *Id.* To plead a conspiracy under § 1983, a plaintiff must first allege "an agreement or 'meeting of the minds' to violate constitutional rights." *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2001) (*quoting United Steel Workers of Am v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-1541 (9th Cir. 1989). A plaintiff must also allege an actual deprivation of a constitutional right. *Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006). A plaintiff must state specific facts to support the existence of the claimed conspiracy. *See Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989). Conclusory allegations of a conspiracy are insufficient to support a claim under section 1983. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

In order to survive a motion to dismiss, a plaintiff alleging a conspiracy to deprive him of his constitutional rights must include in his complaint nonconclusory allegations containing evidence of unlawful intent. *Harris v. Roderick*, 126 F.3d 1189, 1195 (9th Cir. 1997). To be liable, each participant in the alleged conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy. *Franklin*, 312 F.3d at 441. A conspiracy can be shown by circumstantial evidence. *See Gilbrook v. City of Westminster*, 177 F.3d 839 at 857-858 (9th Cir. 1999). However, the ability and opportunity to conspire are insufficient, without more, to prove the existence of a conspiracy. *United Steel Workers of Am. v. Phelps Dodge Corp.* 865 F.2d 1539, 1540-1541 (9th Cir. 1989).

Plaintiff has failed to plead any specific facts to support the existence of this claimed conspiracy. Plaintiff makes a conclusory allegation that the Defendants conspired "to cover up the fact that

Plaintiff was indeed put in harm." (ECF No. 6 at 9). Plaintiff simply states that each Defendant "conspired to violate the Plaintiff Health & Safety under the Eighth and Fourteenth Amendment's. With Deliberate Indifference." (*See id*. at 2-4). Plaintiff does not assert that any of the Defendants met, that they discussed Plaintiff's medical needs, or that the Defendants made an agreement to violate his Eighth Amendment rights. Plaintiff also fails to allege that the Defendants acted with unlawful intent or had a shared objective. Plaintiff provides no factual detail that would support a claim of conspiracy against any Defendant. Thus, the Court finds that Plaintiff has failed to state a conspiracy claim that is plausible on its face.

    Accordingly, the Court **RECOMMENDS** that Defendants' Motion to Dismiss be **GRANTED** as to Plaintiff's Conspiracy claims against Defendants Gray, Belavich, Crow, Banaga-Bugarin, Zamora, and McEwen.

## V. CONCLUSION

    For the foregoing reasons, **IT IS HEREBY RECOMMENDED:**

    1) Defendants' Motion to Dismiss Plaintiff's Eighth Amendment Claims against Defendants Gray, Belavich, Crow, Banaga-Bugarin, Zamora, and McEwen be **GRANTED**, and Plaintiff given leave to amend those claims.

    2) Defendants' Motion to Dismiss Plaintiff's Conspiracy Claims against Defendants Gray, Belavich, Crow, Banaga-Bugarin, Zamora, and McEwen be **GRANTED**, and Plaintiff given leave to amend those claims.

    **IT IS HEREBY ORDERED** that any written objections to this Report must be filed with the Court and served on all parties no later than August 21, 2013. The document should be captioned "Objections to Report and Recommendation."

1  **IT IS FURTHER ORDERED** that any reply to the objection shall
2  be filed with the Court and served on all partied no later than August 28,
3  2013. The parties are advised that the failure to file objections within the
4  specified time may waive the right to raise those objections on appeal of
5  the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir.
6  1998).

**IT IS SO ORDERED.**

**DATED: July 31, 2013**

**Hon. Mitchell D. Dembin**
**U.S. Magistrate Judge**